**Myrtle GOODLEFT for herself and the Estate of Dustin Seewalker, Plaintiff and Appellant**

v.

**Phillip GULLICKSON, a/k/a Philip Gullikson, Defendant**

v.

**MIDWEST CASUALTY INSURANCE COMPANY, Intervenor and Appellee.**

Civil No. 950206.

Supreme Court of North Dakota.

Dec. 10, 1996.

Fintan L. Dooley, Bismarck, for plaintiff and appellant.

Joel W. Gilbertson, of Pearce & Durick, Bismarck, for intervenor and appellee.

VANDE WALLE, Chief Justice.

Myrtle Goodleft, for herself and for the estate of her five-year old grandson, Dustin Seewalker, appealed from a summary judgment dismissing her claim against Phillip Gullickson for the wrongful death of Dustin. We hold that, under N.D.C.C. § 32–21–03, Goodleft was not entitled to bring a wrongful death claim as Dustin's "surviving mother or father" and she failed to satisfy the statutory requirements for bringing the claim in her capacity as personal representative of Dustin's estate. However, we conclude that, under N.D.R.Civ.P. 17(a), the trial court should have granted a reasonable time for the substitution of Dustin's parents as plaintiffs, or for their ratification of this action, and we remand for further proceedings.

On February 29, 1992, Gullickson was driving a car which was involved in an accident. Dustin's mother, Ila Painte, owned the car, and Painte and Dustin were passengers in it when the accident occurred. On March 2, 1992, Dustin died from injuries sustained in the accident. In charges stemming from the mishap, Gullickson pled guilty to driving while under the influence and to aggravated and reckless driving, and Painte pled guilty to having no liability insurance.

On February 23, 1994, Goodleft was appointed personal representative of Dustin's estate. According to Goodleft, prior to her appointment as personal representative, she met with Painte and Dustin's father, Ronald Seewalker, and they entered into a "working agreement" for Goodleft to pursue a wrongful death action against Gullickson. By service of a summons and complaint on February 24, 1994, Goodleft, for herself and Dustin's estate, commenced an action against Gullickson, alleging his negligence "caused ... serious injuries to and [the] ultimate death of Dustin." Gullickson did not answer or appear, and Goodleft moved for a default judgment. The trial court treated Goodleft's complaint as an action for the wrongful death of Dustin and denied her motion for default judgment, ruling she had failed to satisfy the statutory requirements for bringing a wrongful death action under N.D.C.C. § 32–21–03.

Goodleft's uninsured motorist carrier, Midwest Casualty Insurance Company, then intervened and moved for summary judgment. The trial court granted Midwest's motion, holding that under N.D.C.C. § 32–21–03, Goodleft did not have standing to personally bring this wrongful death action and, as personal representative, she had failed to make a proper demand on the persons with higher priority for bringing the action. The court concluded Goodleft's action was barred by the two-year statute of limitations in N.D.C.C. § 28–01–18(4).

The trial court dismissed Goodleft's action by summary judgment, a procedural device for promptly disposing of a lawsuit without a trial if, after viewing the evidence in the light most favorable to the party against whom it is sought, and giving that party the benefit of

all favorable inferences, there is no genuine dispute as to either the material facts or the inferences to be drawn from the undisputed facts, or if only a question of law is involved. *Diegel v. City of West Fargo*, 546 N.W.2d 367 (N.D.1996). *See* N.D.R.Civ.P. 56.

## I

At common law there was no cause of action for wrongful death, and, absent statutory authorization, there was no right to recover for the wrongful death of another. *Sheets v. Graco, Inc.*, 292 N.W.2d 63 (N.D. 1980); *Willard v. Mohn*, 24 N.D. 390, 139 N.W. 979 (1913); *Satterberg v. Minneapolis, St. Paul & S.S.M. Ry. Co.*, 19 N.D. 38, 121 N.W. 70 (1909); *Harshman v. Northern Pacific Ry. Co.*, 14 N.D. 69, 103 N.W. 412 (1905). *See generally* 1 Speiser, Krause, Madole, *Recovery for Wrongful Death and Injury*, § 1:1 (3rd ed.1992).

Our wrongful death statutes are found in N.D.C.C. Ch. 32–21, and the interpretation of those statutes is a question of law, which is fully reviewable by this court. *See Jones v. Pringle & Herigstad, P.C.*, 546 N.W.2d 837 (N.D.1996). Our primary objective in interpreting a statute is to determine the Legislature's intent. *Jones*. We look first to the language of the statute and give it its plain, ordinary, and commonly understood meaning. *Jones*; N.D.C.C. § 1–02–02. When a statute is clear and unambiguous, we do not disregard the letter of the statute under the pretext of pursuing its spirit. *Jones*. We construe statutes as a whole to give each provision meaning and effect. *Stewart v. Ryan*, 520 N.W.2d 39 (N.D.1994).

Here, the primary issue is the interpretation of N.D.C.C. § 32–21–03, which outlines a statutory hierarchy for bringing a wrongful death action:

"The action shall be brought by the following persons in the order named:

  "1. The surviving husband or wife, if any.

  "2. The surviving children, if any.

  "3. The surviving mother or father.

  "4. The personal representative.

"If any person entitled to bring the action refuses or neglects so to do for a period of thirty days after demand of the person next in order, such person may bring the same."

Under the plain language of N.D.C.C. § 32–21–03, Dustin's surviving mother and father, Painte and Seewalker, are the preferred persons for bringing this wrongful death claim. However, Goodleft contends she was entitled to bring this action under N.D.C.C. § 32–21–03(3), because she was Dustin's "psychological" or "de facto" mother.

■ A wrongful death action must be prosecuted by a person with statutory authority to bring the action. *Willard; Satterberg; Harshman. See generally* 2 Speiser, at § 11:29; 25A C.J.S. *Death* § 57 (1966); 22A Am.Jur.2d *Death* § 398 (1988). However, the person authorized to bring a wrongful death action does not have an absolute right to the damages recovered, and, instead, brings the action in a representative capacity for the exclusive benefit of the persons entitled to recover. *Broderson v. Boehm*, 253 N.W.2d 864 (N.D.1977); *Armstrong v. Miller*, 200 N.W.2d 282 (N.D.1972); *Satterberg. See generally* 25A C.J.S. *Death*, at §§ 33(1) and 37(1)(a).

■ Under our wrongful death statutes, a jury may award damages "to the persons entitled to the recovery," N.D.C.C. § 32–21–02, and the amount recovered shall not be liable for the decedent's debts, but "shall inure to the exclusive benefit of the decedent's heirs at law" for their losses. N.D.C.C. § 32–21–04; *Broderson; Satterberg*. The trial court may allocate damages to the decedent's heirs at law as the court deems necessary. N.D.C.C. § 32–21–04; *Gorley v. Parizek*, 475 N.W.2d 558 (N.D. 1991). In *Broderson*, we said "heirs at law" was not synonymous with the persons authorized by N.D.C.C. § 32–21–03, to bring a wrongful death action, and we construed the term to mean those persons entitled to a decedent's estate by the laws of intestate succession. *See Satterberg. See also* N.D.C.C. Ch. 30.1–04 [outlining laws of intestate succession].

■ Our wrongful death statutes thus differentiate between the capacity to bring an

action and the right to share in the damages recovered. *Broderson; Satterberg; Harshman. See also* N.D.C.C. § 32–21–06 [The person authorized to bring a wrongful death action may compromise the action, and the compromise is "binding upon all persons authorized to bring the action or to share in the recovery."]. *See generally* 2 Speiser, at § 10.1; 25A C.J.S. *Death,* at § 32; 22A Am. Jur.2d *Death,* at § 89.

This case involves Goodleft's right to bring a wrongful death claim, not the determination of Dustin's heirs at law or the allocation of damages. In *Harshman,* this court considered an analogous issue of whether the decedent's father was entitled to bring a wrongful death action under the predecessor of N.D.C.C. § 32–21–03, which did not then include language authorizing the decedent's "surviving mother or father" to bring the action.[1] This court noted the difference between a party authorized to bring a wrongful death action and the ultimate beneficiary of the action, and held that, under the plain language of the prior statute, the surviving father's complaint did not state a cause of action for the wrongful death of his son even though the father may have been the sole heir.

■ A grandmother is not explicitly authorized to bring a wrongful death action under N.D.C.C. § 32–21–03. The preferred person for bringing this action under N.D.C.C. § 32–21–03 is Dustin's "surviving mother or father." The ordinary meaning of mother is "a woman who has borne a child." Webster's New World Dictionary 928 (2nd Coll. Ed.1980). *See State Farm Mut. Auto. Ins. Co. v. Clyde,* 920 P.2d 1183 (Ut.1996) [ordinary meaning of parent is one who begets offspring]; *Vallati v. Gniazdowski,* 31 Conn.

Supp. 238, 328 A.2d 431 (1974) [same]. *Cf.* N.D.C.C. § 14–19–01(6) [" 'Mother' means a woman who gives birth to a child...."]. In the absence of an express statutory authorization, we decline to extend the ordinary meaning of mother to include grandmother.[2] *See Harshman.*

■ We also reject Goodleft's argument that she was entitled to bring this wrongful death claim because she was Dustin's "psychological" or "de facto" mother. It is generally held, notwithstanding the care and support of a child, a person standing in loco parentis is not a child's father or mother for purposes of a wrongful death action. *Solomon v. Harman,* 107 Ariz. 426, 489 P.2d 236 (1971) [foster parents were not parents]; *Marshall v. Macon Sash Door & Lumber Co.,* 103 Ga. 725, 30 S.E. 571 (1898) [stepfather was not father]; *Taylor v. Parr,* 678 S.W.2d 527 (Tex.Ct.App.1984) [managing conservators and foster parents were not parents]; *Clyde* [grandparents were not parents]. *Compare Moon Distributors, Inc. v. White,* 245 Ark. 627, 434 S.W.2d 56 (1968) [statute allowed recovery for persons standing in loco parentis to the deceased person]. *See generally* 2 Speiser, at § 10:16.

We do not believe the Legislature intended the ordinary meaning of "mother" or "father" to include a "de facto" or "psychological" mother or father. *Cf.* N.D.C.C. § 1–01–18 ["The term 'children' includes children by birth and by adoption."]; N.D.C.C. § 14–17–01 ["As used in this chapter, 'parent and child relationship' means the legal relationship existing between a child and his natural or adoptive parents."]; N.D.C.C. § 14–19–01(8) [" 'Relationship of father and child' means the legal relationship existing between

1. Subsection three of N.D.C.C. § 32–21–03, which authorizes the "surviving mother or father" to bring a wrongful death action as the third preferred party, was adopted by the Legislature in 1917 N.D. Laws, ch. 106, § 1.

2. With some variation, our wrongful death statutes were derived from Lord Campbell's Act, passed by the British Parliament in 1846. *Satterberg v. Minneapolis, St. Paul & S.S.M. Ry. Co.,* 19 N.D. 38, 121 N.W. 70 (1909). *See generally* 1 Speiser, Krause, Madole, *Recovery for Wrongful Death and Injury* §§ 1:8; 1:9 (3rd ed.1992). Under Lord Campbell's Act, the word "parent" was

expressly defined to include "grandfather" and "grandmother." *See* 2 Speiser, at § 10:15; 3 Speiser, at Appendix A, pages 1–2; 22A Am. Jur.2d *Death* § 113 (1988). Unlike Lord Campbell's Act, our wrongful death act does not define mother and father to include grandmother and grandfather. It is for the Legislature, who authorized the wrongful death action in the first instance, to determine if grandparents should be included in the statutory hierarchy. The facts of this case appear to be a powerful argument for that result.

a father and his natural or adoptive child."]. We hold, for purposes of bringing this wrongful death claim, Goodleft is not a "surviving mother or father" of Dustin under the plain language of N.D.C.C. § 32–21–03(3).

## II

Goodleft contends she was entitled to bring this wrongful death claim as the personal representative of Dustin's estate under N.D.C.C. § 32–21–03(4), because she made an appropriate demand on Dustin's mother and father, and they refused to bring the action within thirty days.

In February 1994, Goodleft applied for appointment as Dustin's personal representative, and she was appointed personal representative of his estate on February 23, 1994. *See* N.D.C.C. § 30.1–13–03 [priority among persons seeking appointment as personal representative]. Under N.D.C.C. § 32–21–03(4), she was entitled to bring this wrongful death claim as personal representative of Dustin's estate "[i]f any person entitled to bring the action refuses or neglects so to do for a period of thirty days after demand of the person next in order." She contends N.D.C.C. § 32–21–03 does not require her to make a written demand on any person of higher priority before instituting a wrongful death action as a personal representative. She argues that, prior to her appointment as personal representative, she met with Painte and Seewalker, and they entered into an oral "working agreement" for her to pursue this action as the personal representative of Dustin's estate. She therefore asserts she complied with N.D.C.C. § 32–21–03.

▆▆▆ We need not decide if N.D.C.C. § 32–21–03 requires a written demand on the person of higher priority, because the discussions and "working agreement" relied upon by Goodleft occurred before she applied for appointment as personal representative of Dustin's estate in February 1994, and before she was appointed as personal representative of his estate on February 23, 1994. For purposes of N.D.C.C. § 32–21–03, those discussions and "working agreement" between Goodleft and Dustin's parents were premature. We construe N.D.C.C. § 32–21–03 to require a person seeking to bring a wrongful

death action as personal representative of the decedent's estate to have been appointed personal representative when the demand required by that statute is made on the person of the next highest priority. We hold, as a matter of law, any discussions and "working agreement" between Goodleft and Dustin's parents before Goodleft was appointed personal representative were not a "demand of the person next in order" under N.D.C.C. § 32–21–03.

Goodleft also argues Painte and Seewalker were disqualified from bringing this action, because Painte was potentially at fault for Dustin's death and Seewalker had abandoned him. Goodleft apparently asserts that she was entitled to bring this action as Dustin's personal representative, because there were no qualified persons with higher priority under N.D.C.C. § 32–21–03.

Our cases have recognized disqualification issues may arise in wrongful death actions. *See Gorley v. Parizek,* 475 N.W.2d 558 (N.D. 1991) [in action by surviving estranged husband, trial court did not err in refusing to award insurance settlement to husband and, instead, awarding settlement to decedent's daughter]; *Patten v. Olson,* 265 N.W.2d 688 (N.D.1978) [estranged husband had pecuniary interest in continued life of deceased wife and was not disqualified from bringing wrongful death action or compromising claim]; *Broderson* [in action by personal representative, father, as owner of car in which deceased daughter was riding, was not disqualified as beneficiary by imputed negligence under family purpose doctrine]; *Bartholomay v. St. Thomas Lumber Co.,* 148 N.W.2d 278 (N.D.1966) [in action by surviving husband, children not disqualified from recovering for wrongful death of mother by failure of husband-father to recover because of his contributory negligence]. Although we have "not explore[d] the outer limits of disqualification permitted by our law," *Patten,* 265 N.W.2d at 690, some of our decisions suggest disqualification issues involve the statutory authority to bring a wrongful death action. *See Patten; Broderson.* However, other decisions suggest disqualification issues affect the right of a beneficiary to share in the damages recovered. *See Gorley; Bar-*

*tholomay.* *See generally* 22A Am.Jur.2d *Death,* at §§ 125 et seq. [circumstances affecting right of survivor to take as beneficiary]; 25A C.J.S. *Death,* at §§ 37(1) et seq. [apportionment of recovery between beneficiaries].

■ Section 32–21–03, N.D.C.C., unambiguously sets forth a hierarchy and procedure for determining capacity to bring a wrongful death action. Our statutes recognize a difference between the capacity to bring the action and the right to share as a beneficiary in damages recovered. *Broderson; Satterberg; Harshman. See also* N.D.C.C. § 32–21–06. *See generally* 2 Speiser, at § 10.1; 25A C.J.S. *Death,* at § 32; 22A Am.Jur.2d *Death,* at § 89. In order to preserve that distinction and to provide certainty to the procedure for bringing a wrongful death action, and construing N.D.C.C. Ch. 32–21 as a whole, we believe issues about disqualification apply to the right of an heir at law to share as a beneficiary in the damages recovered and do not affect the statutory hierarchy and procedural requirements for bringing the action under N.D.C.C. § 32–21–03. We therefore reject Goodleft's argument that, as personal representative of Dustin's estate, she was entitled to bring this wrongful death claim because Dustin's parents were disqualified.

### III

Goodleft also argues the trial court should have allowed her to amend the pleadings under N.D.R.Civ.P. 15(a) and 19(a) to substitute Painte and Seewalker as plaintiffs.

■ Generally, the right to join parties in an action is subject to the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *See In the Matter of Estate of Murphy,* 554 N.W.2d 432 (N.D.1996). Although not cited to the trial court or this court, N.D.R.Civ.P. 17(a) provides, in part:

"No action may be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after the objection for ratification of commencement of the action by, or joinder or substitution

of, the real party in interest; and the ratification, joinder, or substitution has the same effect as if the action had been commenced in the name of the real party in interest."

■ Rule 17, N.D.R.Civ.P., is derived from the corresponding federal rule. *See* N.D.R.Civ.P. 17, Explanatory Note. Although not binding, federal court interpretations of a corresponding rule of procedure are highly persuasive in construing our rule. *E.g., Thompson v. Peterson,* 546 N.W.2d 856 (N.D. 1996). *See* N.D.R.Civ.P. 1, Explanatory Note. The Federal Advisory Committee Notes explain that F.R.Civ.P. 17(a) allows ratification or substitution "in the interests of justice" when the determination of the proper plaintiff is difficult, or when an understandable mistake has been made. *See Jaramillo v. Burkhart,* 999 F.2d 1241 (8th Cir. 1993) [grandmother not entitled to sue for medical expenses for death of granddaughters' mother, but grandmother was entitled to reasonable time to substitute granddaughters' father as real party in interest]; *Duckett v. District of Columbia,* 654 A.2d 1288 (D.C.Ct.App.1995) [mother not entitled to sue for wrongful death in personal capacity, but was entitled to substitute herself as plaintiff in her capacity as personal representative]; *Hembree v. Tinnin,* 807 F.Supp. 109 (D.Ct. Kan.1992) [decedent's father not entitled to sue for wrongful death, but was entitled to additional time to substitute decedent's widow as plaintiff]; *Brohan v. Volkswagen Mfg. Corp. of America,* 97 F.R.D. 46 (E.D.N.Y. 1983) [decedent's widow not entitled to sue for wrongful death, but was allowed to amend complaint to substitute herself as plaintiff in her capacity as personal representative].

■ Here, Goodleft alleges there were discussions and a "working agreement" between her and Dustin's parents regarding this wrongful death claim. As we have held, those discussions and "working agreement" technically did not constitute a "demand" under N.D.C.C. § 32–21–03. However, we believe they represent circumstances for which relief is available under N.D.R.Civ.P. 17(a). We conclude that, under N.D.R.Civ.P. 17(a), Goodleft should have been granted a

reasonable time for the substitution of Dustin's parents as plaintiffs, or for their ratification of this action. We therefore remand for further proceedings.

## IV

Finally, we note that the trial court treated Goodleft's action as a claim for the wrongful death of Dustin. Although Goodleft's amended complaint was captioned as "a wrongful death action," she alleged Gullickson's negligence "caused serious injuries to, and on March 2, 1992, the ultimate death of Dustin."

■ ■ Under N.D.R.Civ.P. 8(f), pleadings are liberally construed to do substantial justice. *E.g., Matter of Estate of Hill,* 492 N.W.2d 288 (N.D.1992). Here, construing Goodleft's complaint liberally, we believe it pleads a wrongful death claim as well as a survival claim for Dustin's injuries between the time of the accident and his death. *See Sheets v. Graco, Inc.,* 292 N.W.2d 63 (N.D. 1980) [explaining the difference between survival claim and wrongful death claim]. A

personal representative is authorized to bring a survival action. *See* N.D.C.C. 30.1–18–03(3); *Hulne v. International Harvester Co.,* 322 N.W.2d 474 (N.D.1982); *Sheets.* Our remand under N.D.R.Civ.P. 17(a) does not preclude the trial court from also considering Goodleft's action as a survival claim.

We remand for further proceedings consistent with this opinion.[3]

VANDE WALLE, C.J.,SANDSTROM, NEUMANN, and MESCHKE, JJ., and DEBBIE GORDON KLEVEN, District Judge, concur.

DEBBIE GORDON KLEVEN, D.J., sitting in place of MARING, J., disqualified.

---

**3.** We express no opinion about a pending action by Goodleft against Midwest for uninsured motorist coverage. *See Hayes v. American Standard Ins. Co.,* 847 S.W.2d 150 (Mo.Ct.App.1993) [child of mother with whom insured cohabitated was "foster child" within meaning of uninsured motorist provision of insurance policy].